Paone v. NH Dept. of Corrections    CV-98-002-M    09/03/98

UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE


Enrico Paone,
     Petitioner

v.                                          Civil No. 98-002-M

Commissioner, N.H. Department
of Corrections,
     Respondent


## O R D E R

On May 14, 1992, Petitioner, Enrico Paone, was indicted by a state grand jury on four counts of felonious sexual assault. Slightly more than three years later, on July 17, 1995, he was arrested in Massachusetts for shoplifting. At that time he was first notified of the criminal charges pending against him in New Hampshire. He waived extradition and returned to New Hampshire. Prior to his trial, Paone moved to dismiss all pending charges against him, arguing that the State's negligence in failing to apprehend him in a timely manner violated his right to a speedy trial under both the New Hampshire and United States Constitutions. The trial court denied his motion and Paone was convicted on all counts. On appeal to the New Hampshire Supreme Court, Paone again raised his speedy trial claims. The court rejected his arguments and affirmed his convictions.


Paone then filed a petition for habeas corpus relief under 28 U.S.C. § 2254. Relying primarily upon the United States Supreme Court's decision in Doggett v. United States, 505 U.S.

647 (1992), he asserts that the state court's ruling was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). Pending before the court is Paone's motion for summary judgment and the State's cross motion for summary judgment.

## Facts

Because Paone does not dispute the factual findings made by the New Hampshire Superior Court (and adopted by the New Hampshire Supreme Court), the following statement of pertinent facts is taken directly from the supreme court's opinion in State of New Hampshire v. Paone, 142 N.H. 216 (1997).

> A grand jury indicted the defendant on May 14, 1992. On May 15, 1992, a capias was issued for his arrest. At the time, the defendant resided in Florida. Prior to November 1991, he had been living in Barnstead. In November 1991, the defendant moved to Massachusetts, where he lived until January 1992. He then moved to Virginia, living first in a motel and then in a rented house. He moved to Florida in March 1992. In Florida, he stayed at several different addresses until May 1993, when he returned to Massachusetts. Upon his return, he used his parents' Medford, Massachusetts address as his mailing address and their phone number as his own. In late 1993, he moved to his own home in Medford.
>
> Following the defendant's indictment, the State attempted to locate the defendant in order to apprehend him. The Belknap County Sheriff's Department notified the Barnstead police of the charges against the defendant, entered the defendant's name in the National Crime Information Center (NCIC) database, and requested police in Medford and in Virginia to investigate address leads. On August 2, 1992, the Belknap County Sheriff's Department contacted the Medford police, sending them a copy of the capias. Though the Medford police stated they would locate the defendant, the residents

2

of the defendant's parents' Medford home reported no police investigation. The Belknap County Sheriff's Department did not contact the Medford police after August 1992, and the State's subsequent efforts to locate the defendant apparently devolved to little more than maintaining his name in the NCIC database. Medford police arrested the defendant for shoplifting on July 17, 1995, and he did not challenge extradition.

On September 18, 1995, the defendant moved to dismiss the pending charges. The defendant argued that, as a result of the State's negligence in attempting to apprehend him, the State violated his rights to a speedy trial under the New Hampshire and United States Constitutions. See N.H. Const. pt. I, art. 14; U.S. Const. amend. VI. In considering this argument, the superior court applied the balancing test for speedy trial claims developed by the United States Supreme Court in the sixth amendment context in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 2191-92, 33 L.Ed.2d 101 (1972), and adopted by this court for use in the State constitutional context in State v. Cole, 118 N.H. 829, 831, 395 A.2d 189, 190 (1978). This test requires a balancing of four factors: "(1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." State v. Stow, 136 N.H. 598, 602, 620 A.2d 1023, 1025 (1993).

The trial court concluded that the length of the delay in this case was sufficient to justify review under the remaining Barker criteria. See State v. Colbath, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988). The court found that the delay in apprehending the defendant resulted from both the defendant's itinerant lifestyle and the State's search efforts. The court noted that there was "no question that the State could have done more to apprehend the defendant," but that "the delay [on the State's part] was not deliberate and was no more than negligent." The court also found that the defendant did not demonstrate actual prejudice from the delay, and any presumptive prejudice was insufficient to warrant dismissing the charges. In sum, the court ruled that the defendant's right to a speedy trial had not been violated, as he had "not provided the court with sufficient evidence of actual prejudice or reason for delay."

Id., at 217-18.

3

Applying the principles articulated by the Supreme Court in Doggett, the New Hampshire Supreme Court determined that the delay in bringing Paone to trial was presumptively prejudicial. It then considered the reasons for that delay and whether he sustained sufficient actual prejudice to warrant dismissal of his convictions. Paone, 142 N.H. at 220. The court concluded that:

> Unlike Doggett, in which the delay apparently resulted solely from the government's negligence, see id. at 652-53, 112 S.Ct. at 2690-91, the trial court here noted that though the State could have been more diligent in apprehending him, the defendant's itinerant lifestyle contributed to the delay by making him difficult to locate, see United States v. Mundt, 29 F.3d 233, 236 (6th Cir. 1994). Indeed, the court concluded that the State's search efforts were "no more than negligent" – a finding which suggests the court determined that the State's efforts, in fact, may have been somewhat less than negligent.
>
> As to the fourth factor of the Barker analysis, the trial court found that the defendant did not assert any actual prejudice. When a defendant does not – or cannot – articulate the particular harm caused by delay, we inquire whether the length and reason for the delay weigh so heavily in the defendant's favor that prejudice need not be specifically demonstrated. See Doggett, 505 U.S. at 657-58, 112 S.Ct. at 2693-94; see also Nelson v. Hargett, 989 F.2d 847, 853 (5th Cir. 1993).

Id., at 220. The court then concluded that the length and reasons for the delay in arresting Paone did not warrant a presumption of actual prejudice. Accordingly, it held that Paone's failure to demonstrate any actual prejudice precluded the court from granting the relief he sought.

> Though presumptively prejudicial, see Doggett, 505 U.S. at 652 n. 1, 112 S.Ct. at 2691 n. 1, the delay in this instance was substantially shorter than the eight and a

4

half years in <u>Doggett</u> and, as discussed above, the State was not solely responsible for the delay. In these circumstances, the defendant's failure to show particular prejudice to his case is fatal to his speedy trial claim. <u>See</u> <u>United States v. Clark</u>, 83 F.3d 1350, 1354 (11th Cir. 1996); <u>Robinson v. Whitley</u>, 2 F.3d 562, 570 (5th Cir. 1993), <u>cert. denied</u>, 510 U.S. 1167, 114 S.Ct. 1197, 127 L.Ed.2d 546 (1994); <u>see also</u> <u>Stow</u>, 136 N.H. at 604, 620 A.2d at 1026.

<u>Id.</u>, at 220-21.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No. 104-132, 110 Stat. 1214 (1996) (codified in various sections of Title 28 of the United States Code), amended the federal standard of review applicable to habeas corpus petitions filed by state prisoners. It provides, among other things, that a federal court shall not grant a writ of habeas corpus filed by a state prisoner unless the underlying state criminal prosecution:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). The Court of Appeals for the First Circuit has established the following analytical framework for federal courts in this circuit to apply when reviewing § 2254 petitions.

5

A federal habeas court charged to weigh a state court decision must undertake an independent two-step analysis of that decision. First, the habeas court asks whether the Supreme Court has prescribed a rule that governs the petitioner's claim. If so, the habeas court gauges whether the state court decision is "contrary to" the governing rule. In the absence of a governing rule, the "contrary to" clause drops from the equation and the habeas court determines whether the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an "unreasonable application" of Supreme Court precedent.

<u>O'Brien v. DuBois</u>, 145 F.3d 16, 24 (1st Cir. 1998).

## Discussion

Once charged with a crime, a criminal defendant is guaranteed a "speedy" trial. U.S. Const. amend. VI. In <u>Barker v. Wingo</u>, 407 U.S. 514 (1972), the Supreme Court identified some of the factors a court should address when considering whether an individual's Sixth Amendment right to a speedy trial has been violated:

> The approach we accept is a balancing test, in which the conduct of both the prosecution and the defendant are weighed. A balancing test necessarily compels the court to approach speedy trial cases on an ad hoc basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

<u>Id.</u>, at 530. The Court cautioned, however, that these factors are related and "must be considered together with such other circumstances as may be relevant." <u>Id.</u>, at 533. It then

6

concluded that, "[i]n sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process." Id.

More recently, the Court considered the extent to which excessive delay in bringing a defendant to trial, caused by the government's negligence, could amount to a Sixth Amendment violation. The Court observed that:

> Although negligence is obviously to be weighed more lightly than deliberate intent to harm the accused's defense, it still falls on the wrong side of the divide between acceptable and unacceptable reasons for delaying a criminal prosecution once it has begun. And such is the nature of the prejudice presumed that the weight we assign to official negligence compounds over time as the presumption of evidentiary prejudice varies inversely with its protractedness, and its consequent threat to the fairness of the accused's trial. Condoning prolonged and unjustified delays in prosecution would both penalize many defendants for the state's fault and simply encourage the government to gamble with the interests of criminal suspects assigned a low prosecutorial priority.

Doggett v. United States, 505 U.S. 647, 657 (1992).

Paone asserts that the 38 month delay between his indictment and his arrest is, as a matter of law, prejudicial under the Supreme Court's analysis in Doggett and mandates that his state convictions be overturned. Accordingly, he claims that the state court erred in holding that he was required to demonstrate some actual prejudice as a result of that delay. Alternatively, Paone argues that the state court's decision was, based upon opinions

7

rendered by other federal courts, an unreasonable application of the principles articulated by the Supreme Court in <u>Barker</u> and <u>Doggett</u>. The court disagrees.

First, as the state court recognized, the delay in bringing Paone to trial was substantially shorter than the 8½ year delay in <u>Doggett</u>. Moreover, the state supreme court concluded that the factual record in this case supported the lower court's finding that the delay at issue was, at least in part, attributable to Paone's conduct, albeit blameless conduct. <u>Paone</u>, 142 N.H. at 218 (citing <u>United States v. Mundt</u>, 29 F.3d 233, 236 (6th Cir. 1994) ("Whether or not defendant was intentionally evading authorities, his lifestyle made it difficult for authorities to track him down. If defendant had not been so transient . . . he would have been found much earlier . . ..")).

Neither <u>Doggett</u> nor <u>Barker</u> stands for the proposition that a delay of 38 months between indictment and arrest, even if caused exclusively by the government's negligence, mandates a finding that the accused's Sixth Amendment right to a speedy trial has been violated. And, as the Court of Appeals for this circuit has made clear, on habeas review Paone must do more than simply identify a Supreme Court opinion which articulates a general standard governing similar claims.

> [W]e hold that an affirmative answer to the first
> section 2254(d)(1) inquiry - whether the Supreme Court
> has prescribed a rule that governs the petitioner's

> claim - requires something more than a recognition that the Supreme Court has articulated a general standard that covers the claim. To obtain relief at this stage, a habeas petitioner must show that Supreme Court precedent requires an outcome contrary to that reached by the relevant state court.

O'Brien, 145 F.3d at 24-25. Paone has failed to demonstrate that Supreme Court precedent requires this court to grant his § 2254 petition on grounds that the New Hampshire Supreme Court's decision is "contrary to" the governing rule.

Turning to the second step of the analysis articulated in O'Brien (i.e., when no Supreme Court precedent is dispositive of petitioner's claim), the court must consider whether "the state court's use of (or failure to use) existing law in deciding the petitioner's claim involved an 'unreasonable application' of Supreme Court precedent." Id., at 24. In order to prevail at this stage, however, the petitioner must demonstrate that "the state court decision [is] so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes." Id., at 25. Again, however, petitioner has failed to carry his burden.

Based upon the factual record before it, the state court plausibly determined that the delay in brining Paone to trial was

9

not attributable exclusively to the State.[1]  It then concluded that the delay between indictment and arrest was not sufficiently great to excuse Paone from demonstrating some actual prejudice as a result of that delay.  As the Court of Appeals for the Fifth Circuit has observed, "The balancing of factors required by Barker emphasizes that the delay itself is merely presumptive and does not warrant an immediate conclusion that the defendant has been denied his Sixth Amendment right to a speedy trial." Robinson v. Whitely, 2 F.3d 562, 568 (5th Cir. 1993).  See also Doggett, 505 U.S. at 655-56 ("While such presumptive prejudice [flowing from excessive delay] cannot alone carry a Sixth Amendment claim without regard to the other Barker criteria, it is part of the mix of relevant factors, and its importance increases with the length of delay.").

Independently applying the relevant Supreme Court precedent, this court cannot conclude that the state's courts erred in requiring Paone to demonstrate some actual prejudice flowing from the delay between his indictment and arrest.  See, e.g., United

---

[1]     Applying the four-part test articulated in Barker v. Wingo, the state trial court first concluded that the delay in bringing Paone to trial was presumptively prejudicial and, therefore, triggered an analysis under the remaining three factors.  It then concluded that the first year of the delay was attributable to Paone because his actions "prevented the State from securing his arrest."  The record from Paone's underlying state criminal trial reveals that between May 1992 and July 1995, Paone lived at nine different locations.  Based upon these and other factors, the state supreme court concluded that "the State was not solely responsible for the delay" in bringing Paone to trial.  State v. Paone, 142 N.H. at 220.

10

States v. Clark, 83 F.3d 1350, 1354 (11th Cir. 1996) (district court erred in failing to require defendant to show actual prejudice, despite fact that 17 month delay between indictment and arrest was due entirely to the government's negligence); United States v. Beamon, 992 F.2d 1009, 1014-15 (9th Cir. 1993) (even though government negligence caused delay of 20 months between indictment and arrest, prejudice would not be inferred; instead, defendant was required to demonstrate actual prejudice). As the Beamon court observed:

> Although the government did not pursue Beamon and McMillin with due diligence, if the delay in this case – only a few months longer than the minimum – were sufficient as a matter of law to relieve the defendant of the burden of coming forward with any showing of actual prejudice, the presumption of prejudice would be virtually irrebuttable. It is clear from Doggett's balancing approach that the Court did not intend such a bright line rule. Therefore, we must consider the amount of delay in relation to particularized prejudice.

Id., at 1014.

Although substantial, the 38 month delay between petitioner's indictment and arrest (some portion of which is attributable to Paone) was not so great as to compel the conclusion that it was, in and of itself, sufficiently prejudicial to require the state court to grant his request for habeas relief absent a showing that he had suffered some actual harm.

11

## Conclusion

In the end, therefore, the court is constrained to deny
Paone's habeas petition. In short, the New Hampshire Supreme
Court's decision was neither contrary to, nor an unreasonable
application of, clearly established Federal law. See 28 U.S.C. §
2254(d)(1). First, neither Barker nor Doggett mandate a finding
that, based solely upon the delay between indictment and arrest
(and absent any showing of actual prejudice), Paone's Sixth
Amendment right to speedy trial was violated. Accordingly, Paone
has failed to carry his burden under the first of the two steps
articulated by the court of appeals for this circuit. See
O'Brien, 145 F.3d at 24-25 ("To obtain relief at this stage, a
habeas petitioner must show that Supreme Court precedent requires
an outcome contrary to that reached by the relevant state
court.").

Next, this court cannot conclude that the state court failed
to adequately consider any of the factors which the Supreme Court
has identified as being relevant when addressing speedy trial
claims. Rather, the state court properly concluded that the
length of the delay in this case was presumptively prejudicial
and then went on to consider the three remaining Barker factors.
After balancing all pertinent factors, the court determined that
Paone's Sixth Amendment right to a speedy trial was not violated.
Whether a different assessment might have been reasonably made is
not the key to relief, however. As long as the state court's

12

determination was not "so offensive to existing precedent, so devoid of record support, or so arbitrary, as to indicate that it is outside the universe of plausible, credible outcomes, it must be allowed to stand." O'Brien, 145 F.3d at 25.

There can be little doubt that this is an arguable, perhaps even a close, case. Nevertheless, whether this or some other court might have reached a different result on the same facts of record is not important. Section 2254's "unreasonable application" clause "does not empower a habeas court to grant the writ merely because it disagrees with the state court's decision or because, left to its own devices, it would have reached a different result." O'Brien, 145 F.3d at 25. The scope of this court's review is far more limited. And here, it is clear that the New Hampshire Supreme Court fairly weighed each of the four relevant factors identified in Barker, reasonably applied the Court's holding in Doggett, and justifiably concluded that Paone had failed to demonstrate that he had been deprived of his right to a speedy trial.

For the foregoing reasons, Paone's motion for summary judgment (document no. 11) is denied and the State's motion for summary judgment (document no. 13) is granted.

**SO ORDERED**

_____
Steven J. McAuliffe
United States District Judge

13

September 3, 1998

cc:   James E. Duggan, Esq.
       Charles T. Putnam, Esq.