Rockingham
No. 93-856

THE STATE OF NEW HAMPSHIRE

v.

ROBERT JUSTUS

November 6, 1995

*Jeffrey R. Howard*, attorney general (*John A. Curran*, assistant attorney general, on the brief, and *Mark D. Attorri*, assistant attorney general, orally), for the State.

*David M. Rothstein*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

HORTON, J. The defendant, Robert Justus, appeals the Superior Court's (*Nadeau*, J.) denial of his motion to dismiss the charges filed against him for violation of his right to a speedy trial. We affirm.

On June 8, 1990, the State filed eleven juvenile petitions against the defendant in Exeter District Court alleging that he had sexually assaulted two younger boys. He was arraigned in district court on June 20, 1990. The State subsequently filed a petition to have the defendant tried as an adult. After several hearings, the District Court (*Cullen*, J.) ordered certification. In January 1991, the State filed a petition to accept certification in superior court. The Superior Court (*Gray*, J.) remanded the case to district court for further hearings relative to the certification. The Superior Court (*Gray*, J.) finally accepted the district court's certification on November 1, 1991. The defendant was indicted on December 3, 1991, and his original trial date was set for April 25, 1992. On April 15, 1992, the defendant moved to dismiss, asserting for the first time his constitutional right to a speedy trial. The Superior Court (*Nadeau*, J.) denied the motion. The defendant was not actually tried until October 21, 1993. In the period between April 25, 1992, and October 21, 1993, the defendant waived his right to a speedy trial several times. The defendant was convicted after a jury trial in Superior Court (*Coffey*, J.) on October 25, 1993. The defendant appeals from the denial of his motion to dismiss, arguing that the 706-day delay between his juvenile arraignment and the original trial date violated his right to a speedy trial under part I, article 14 of the New Hampshire Constitution and the sixth and fourteenth amendments of the United States Constitution.

We address the defendant's claims first under the State Constitution, *State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350 (1983), considering federal law only as an analytical aid, *State v. Maya*, 126 N.H. 590, 594, 493 A.2d 1139, 1143 (1985). Where, as in the instant case, the federal law is not more favorable to the defendant, *see In re Gault*, 387 U.S. 1 (1967), we make no separate federal analysis. *See State v. Bernaby*, 139 N.H. 420, 422, 653 A.2d 1124, 1126 (1995).

We apply a four-part test first enunciated in *Barker v. Wingo*, 407 U.S. 514, 530-33 (1972), for determining whether a defendant's speedy trial right under part I, article 14 of the State Constitution has been violated. *State v. Colbath*, 130 N.H. 316, 319, 540 A.2d 1212, 1213 (1988). These factors are: "(1) the length of the pretrial delay; (2) the reasons for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay." *Bernaby*, 139 N.H. at 422, 653 A.2d at 1126. "No inquiry as to the remaining three *Barker* factors is required, however, unless the length of the delay is presumptively prejudicial." *Humphrey v. Cunningham, Warden*, 133 N.H. 727, 734, 584 A.2d 763, 767 (1990). For purposes of a speedy trial analysis in adult criminal proceedings the length of the pretrial delay is calculated beginning when the defendant is arrested or indicted, whichever comes first. *State v. Quinlan*, 122 N.H. 51, 53, 440 A.2d 13, 14 (1982). A delay of less than nine months in an adult felony case is not considered presumptively prejudicial. *State v. Panzera*, 139 N.H. 235, 239, 652 A.2d 136, 138 (1994). In this case, the defendant argues that the speedy trial period should be calculated beginning with the date on which the defendant was served with the juvenile petitions and ending with the first date scheduled for the defendant's trial as an adult, since the defendant waived his right to a speedy trial between the first trial date and the actual trial. The question for this court, then, is the appropriate method of determining the constitutional right to a speedy trial when a juvenile is certified to stand trial as an adult. We agree with the trial court that the certification proceedings and the proceedings after the superior court has accepted certification should be considered separately.

In *Gault*, the United States Supreme Court held that the fundamental principles of due process were applicable to juvenile delinquency proceedings. *In re Gault*, 387 U.S. at 30-31. The Court did not fasten all of the constitutional rights mandated in adult criminal trials onto juvenile proceedings, however. Instead, the Court held "that the hearing must measure up to the essentials of due process and fair treatment." *Id.* at 30. Which rights are required in juvenile proceedings is to be decided on a case-by-case basis. The Supreme Court has never held that due process requires the right to a speedy trial in juvenile proceedings. Moreover, those States that have addressed the issue are in conflict. A number of courts have held that either the federal or state constitutions require a speedy trial analysis beginning with juvenile arrest and running through the certification proceedings until the defendant is tried as an adult. *E.g., State v. Dillard*, 718 P.2d 1272, 1281-83 (Idaho Ct. App.), *cert.*

*denied*, 479 U.S. 887 (1986); *State v. Jones*, 521 N.W.2d 662, 668 (S.D. 1994); *see also In Interest of C.T.F.*, 316 N.W.2d 865, 868 (Iowa 1982). On the other hand, a significant number of courts have held that the pretrial delay does not begin to run until the defendant is certified and charged as an adult. *E.g., Cruse v. State*, 489 So. 2d 694, 697 (Ala. Crim. App. 1986); *State v. Myers*, 569 P.2d 1351, 1352-53 (Ariz. 1977) (en banc); *State v. Trapp*, 368 N.E.2d 1278, 1280 (Ohio Ct. App. 1977). Both groups recognize that juvenile certification proceedings are not criminal in nature, but rather that "[t]he provisions for binding a juvenile over to be tried under adult criminal procedures are carefully designed to protect the interests of the minor and the safety of the community." *Trapp*, 368 N.E.2d at 1280.

■ We have also recognized that the purpose of certification "hearings is not adjudicatory, but rather what we termed 'investigatory.' A juvenile certification hearing is not determinative of guilt or innocence, or of a right to liberty, but designed to identify the appropriate procedure to achieve a fair resolution of guilt or innocence and any punishment flowing therefrom." *In re Eduardo L.*, 136 N.H. 678, 687, 621 A.2d 923, 929 (1993) (citation omitted). Given the distinctive nature of the juvenile certification proceedings, it is reasonable to consider the delay in the juvenile hearings separate from the delay in bringing the defendant to trial once he has been certified as an adult. *Cf. State v. Langone*, 127 N.H. 49, 53, 498 A.2d 731, 733 (1985) (holding that delay in bringing defendant to trial in district court for misdemeanor offense and delay in bringing trial *de novo* in superior court should be considered separately).

For purposes of the juvenile proceedings, the statute provides the defendant with a right to a speedy trial. RSA 169-B:14, II; RSA 169-B:24 (1994); *see In re Russell C.*, 120 N.H. 260, 268, 414 A.2d 934, 938 (1980). The court must hold an adjudicatory hearing no later than thirty days after the juvenile's arraignment, *see* RSA 169-B:14, II, and the State may seek to transfer the juvenile to superior court for trial as an adult before a juvenile adjudicatory hearing is held, *see* RSA 169-B:24. If the district court fails to hold an adjudicatory hearing within the time limits established by the statute, the court loses jurisdiction, "unless such noncompliance is the result of a delay caused or requested by the juvenile." *In re Russell C.*, 120 N.H. at 268, 414 A.2d at 938. The defendant does not contend that these statutory standards were violated in this case.

■ Once the district court has certified the defendant to stand trial as an adult, and the superior court accepts the certification, the defendant's right to a speedy trial begins to run when the defendant is placed under supervision or indicted, whichever occurs first. *See*

RSA 169-B:24 (authorizing a juvenile whose case is transferred and accepted by superior court to be placed under the supervision of a juvenile services officer, provide sureties, or be detained at a county correctional facility pending disposition of his case in superior court); *cf. Humphrey*, 133 N.H. at 734, 584 A.2d at 767 (recognizing that the period of delay in an adult criminal case begins to run from the time the defendant is arrested or charged, whichever comes first).

 In this case, the defendant was not detained during the juvenile proceedings. After the superior court accepted certification on November 1, 1991, the State indicted the defendant on December 3, 1991. The State then obtained a capias for the defendant's arrest in Illinois where he had traveled. The Illinois authorities arrested the defendant and extradited him to New Hampshire where he was arraigned on February 3, 1992. Since the adult criminal proceedings did not begin against the defendant until he was indicted on December 3, 1991, we use this as the starting point for determining the pretrial delay. *See Humphrey*, 133 N.H. at 734, 584 A.2d at 767. A trial date was initially scheduled for April 25, 1992, which the defendant concedes should be the end-point for the pretrial delay in this case. This period is well within the nine months which this court has held is required before pretrial delay will be considered presumptively prejudicial. *Panzera*, 139 N.H. at 239, 652 A.2d at 138. We, therefore, do not need to consider the other *Barker* factors. *Id.* The defendant's right to a speedy trial has not been infringed.

*Affirmed.*

BATCHELDER, J., retired, sat by special assignment under RSA 490:3; all concurred.